IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3211-FL

MYRON RODERICK NUNN,                    )
                                        )
            Plaintiff,                  )
                                        )
        v.                              )                    ORDER
                                        )
ALVIN W. KELLER, SR., JOSEPH B. HALL,   )
RICKIE ROBINSON, MRS. HAYES,            )
CAPTAIN MITCHELL, DENISE R.             )
SHERROD, DONNA-MARIE                    )
MEWHORTER, MR. HOCUTT, MR. TASTO,       )
MR. HOWARD, ROBERT C. LEWIS,            )
TIMOTHY J. MCKOY, GEORGE                )
KENWORTHY, DR. RONALD BELL, MR.         )
LANIER, MR. HILDRETH, SERGEANT          )
LUTHER, CHAPLAIN GULLETT, MR.           )
DUNLAP, MR. COLSON, MR. RODOSEVIC,      )
DR. SAMI HASSAN, RICKY MATTHEWS,        )
and LEWIS SMITH,                        )
                                        )
            Defendants.                 )

The matter comes before the court on the respective motions for summary judgment pursuant

to Federal Rule of Civil Procedure 56 filed by defendants Sami Hassan ("Hassan") (DE 150) and

Dr. Ronald Bell ("Bell") (DE 152). Also before the court is the motion for summary judgment

(DE 164) filed by defendants Mr. Colson ("Colson"), Mr. Dunlap ("Dunlap"), Chaplain Gullett

("Gullett"), Joseph B. Hall ("Hall"), Mr. Hildreth ("Hildreth"), Mr. Hocutt ("Hocutt"), Tabor

Superintendent George Kenworthy ("Kenworthy"), Mr. Lanier ("Lanier"), Sergeant Luther

("Luther"), Donna-Marie Mewhorter ("Mewhorter"), Lewis Smith ("Smith"), Mr. Tasto ("Tasto"),

Mr. Rodosevic ("Rodosevic"), and Captain Mitchell ("Mitchell") (collectively referred to as the

"non-medical defendants") (DE 164). These motions have been fully briefed. Finally before the court are plaintiff's unopposed motion for a preliminary injunction (DE 215), motion to serve the remainder of his sentence on work release (DE 218), and motion to amend (DE 219). In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' respective motions for summary judgment and denies plaintiff's motions.

## STATEMENT OF THE CASE

On November 30, 2010, plaintiff filed this action and subsequently filed four motions to amend his complaint. Rather than accept any of plaintiff's proposed amended complaints, the court, on March 30, 2011, entered an order allowing plaintiff the opportunity to file one amended complaint to cure any defects and to particularize his claims. Plaintiff filed his amended pleading on April 18, 2011, alleging claims that arose at Columbus Correctional Institution ("Columbus"), Tabor Correctional Institution ("Tabor"), Franklin Correctional Institution ("Franklin"), Johnston Correctional Institution ("Johnston"), and Albemarle Correctional Institution ("Albemarle").

On December 15, 2011, the court conducted a frivolity review of plaintiff's amended pleading. The court dismissed as frivolous plaintiff's claims arising out of Columbus in 2008, as well as his claims arising out of Franklin. The court dismissed without prejudice plaintiff's claims arising out of Columbus in 2011. The court allowed plaintiff to proceed with the following claims: (1) plaintiff's claim that defendant Kenworthy and defendant Bell acted with deliberate indifference to his medical needs at Tabor; (2) plaintiff's claim that defendant Sherrod and defendant Robinson issued a retaliatory transfer while plaintiff was at Franklin; (3) all claims arising at Johnston against defendant Hall, defendant Mitchell, defendant Mewhorter, defendant Hocutt, and defendant Tasto, except his claim arising out of alleged unconstitutional searches and seizures (which the court

dismissed as frivolous); (4) alleged constitutional violation against defendant Lanier, defendant Hildreth, defendant Luther, defendant Gullet, defendant Dunlap, defendant Colson, and defendant Rodosevic, arising out of the denial of hardship call at Albemarle; (5) Eighth Amendment claim for deliberate indifference to medical care against defendant Hassan at Albemarle; and (6) plaintiff's conditions of confinement claim against defendant Smith arising out of the alleged communal beard trimmer at Albemarle. Plaintiff's remaining claims were dismissed as frivolous.

Plaintiff subsequently filed two motions to amend his complaint and a motion for summary judgment.[1] The court allowed plaintiff's motions to amend, and permitted him to proceed with his newly asserted claim that defendant Ricky Matthews ("Matthews") violated his First Amendment right to access to courts because he prevented plaintiff from engaging in discovery.

On May 29, 2012, the non-medical defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that plaintiff failed to exhaust his administrative remedies, pursuant to 42 U.S.C. § 1997e(a), prior to filing this action. The motion was fully briefed. Then, on August 15, 2012, plaintiff filed a motion to amend his complaint. On November 16, 2012, the court entered an order and dismissed plaintiff's claim against defendant Matthews for failure to exhaust administrative remedies. The court also held plaintiff's motion to amend in abeyance to permit defendants the opportunity to respond. On December 3, 2012, plaintiff filed another motion to amend his complaint, and on February 4, 2013, the court entered an order denying plaintiff's two pending motions to amend.

On February 27, 2013, defendant Hassan filed a motion for judgment on the pleadings, which was fully briefed. Defendant Hassan and defendant Bell each subsequently filed motions for

---

[1] The court denied plaintiff's motion for summary judgment as part of its November 16, 2012, order.

summary judgment. In support of their respective motions, defendant Hassan and defendant Bell submitted affidavits. The non-medical defendants also filed a motion for summary judgment. In support of their motion for summary judgment, the non-medical defendants submitted the affidavits of defendant Sherrod, defendant Hildreth, and defendant Kenworthy, as well as the North Carolina Department of Public Safety's ("DPS") administrative remedy procedure. In opposition to the motions for summary judgment, plaintiff submitted personal declarations, as well portions of his medical records, letters, grievances, and sick call requests. The motions were fully briefed. In light of the fact that defendant Hassan filed a motion for summary judgment, the court denied as moot defendant Hassan's motion for judgment on the pleadings.

On December 12, 2013, plaintiff filed a motion to re-file and motion to amend his complaint. The court denied plaintiff's motion on January 24, 2014, and directed the non-medical defendants to supplement the record to provide evidence to support their contention that plaintiff failed to exhaust his administrative remedies.

<strong>STATEMENT OF UNDISPUTED FACTS</strong>

The undisputed facts may be summarized as follows. In October 2008, at Tabor, defendant Bell referred plaintiff to a podiatrist for treatment of an ingrown toenail. (Bell Aff. ¶ 11.) The podiatrist removed plaintiff's ingrown toenail at Central Prison on November 13, 2008. (Id. ¶ 12; Pl's Resp. (DE 175), Ex. A.) The podiatrist also made the following post-surgical recommendations: (1) Keflex (an antibiotic) for ten days; (2) Darvocet (a pain killer) for five days; (3) daily foot soaks in Betadine (antiseptic); and (4) daily application of antibiotic ointment and bandage. (Id.) The following day, the podiatrist's post-surgical recommendations were continued

4

and/or renewed by another physician at DPS, who is not a party to this action.  (Id. ¶ 13; Pl's Resp. (DE 175), Ex. A.)

Meanwhile, on October 23, 2008, plaintiff filed a sick call request stating that prison officials confiscated his medical boots and requesting that they be returned.  (DE 139, p. 11.)  The nurse responded that the custody staff agreed to return the boots.  (Id.)  Plaintiff additionally filed a grievance, on the same date, stating that his "Nu Tec Boots" were confiscated when he was transferred to Tabor on October 22, 2008.  (DE 67 Ex. A.)  Plaintiff further stated in his grievance that a "male nurse [] initially told the Lt. [plaintiff] could keep [his] boots.  But after he read the letter that the Nurse wrote at 3710 and about the lie that Sgt. Taylor wrote about [plaintiff] refusing to get [his] feet measured.  The male nurse told the Lt [plaintiff] couldn't have his boots back."  (Id.) In response to plaintiff's grievance, prison officials informed plaintiff that he did not have a medical order for special shoes/boots.  (Id.) On October 29, 2008, plaintiff filed a second sick call request for the return of his boots, and the nurse directed plaintiff to address the issue with custody staff. (DE 139  p. 13.)  Plaintiff then submitted another sick call request asking for a renewal of his medical boots because his boots had been confiscated and lost by medical staff.  (Id. p. 14.)  The nurse then informed plaintiff that he was on the list to see a physician.  (Id.)

On November 18, 2008, defendant Bell recommended that prison officials provide plaintiff with non-steel toe boots.  (Bell Aff. ¶ 15; Pl's Resp. (DE 175), Ex. A;(DE 139, p. 7)).  Two days later, defendant Bell recommended that plaintiff be provided Keflex twice daily for ten (10) days and Darvocet every six hours.  (Bell Aff. ¶ 16; Pl's Resp. (DE 175), Ex. A.)  On December 2, 2008, plaintiff filed a sick call request asking that the physician write an order which would allow his family to provide him with a pair of medical boots.  (DE 139, p. 16.)   The nurse responded that

5

medical staff was not responsible for providing plaintiff his boots. (Id.) According to plaintiff's own allegations, he received medical boots on December 23, 2008. (Am. Compl. (DE 26, p. 7).)

From October 16, 2009, through October 3, 2010, at Franklin, defendant Sherrod provided plaintiff with notary services. (Answ. DE 61, Ex. B, p. 3.) At some point in October 2010, plaintiff wrote defendant Sherrod a letter complaining that she refused to provide him copies to assist him with post-conviction proceedings. (Id.) After receiving the letter, defendant Robinson removed plaintiff from defendant Sherrod's case load and assigned plaintiff to another DPS employee, non-party Mr. Bryant. (Id. p. 5.) Then, on October 3, 2010, prison officials confronted plaintiff regarding the letter. (Id. p. 3.) Plaintiff then requested a transfer from Franklin. (Id. p. 5.)

Plaintiff was transferred to Albemarle on November 23, 2010. (Hassan Aff. ¶ 4.) On December 9, 2010, defendant Hassan examined plaintiff and, in the course of the examination, defendant Hassan noted the following pertinent conditions: (1) plaintiff's gate and pulse were within normal limits; (2) plaintiff had calluses around his toes; and (3) plaintiff had moderately flattened arches. (Id. ¶ 9.) Hassan entered the following relevant orders with respect to plaintiff's care: (1) an order for a pumice stone for a period of one year for softening rough skin on plaintiff's feet; and (2) size twelve (12) gel insoles for plaintiff's shoes. (Id. ¶ 10.) Although plaintiff previously had been prescribed "Dr. 2 Shoes" by previous DPS medical providers, defendant Hassan made the determination that "Dr. 2 Shoes" were not "medically appropriate" at that time. (Id. ¶ 7, 8, 12.) Defendant Hassan states that he ordered size twelve (12) gel insoles because plaintiff reported to him that his shoe size was twelve (12). (Id. ¶ 15.)

6

Plaintiff's mother passed away on December 18, 2010, and defendant Lanier, the assistant unit manager, informed plaintiff of his mother's death the following day. (Pl.'s Decl. (DE 181 ¶ 6).) Lanier "referred him to [defendant] Chaplain Gullett for a hardship call." (Id.)

On December 21, 2010, plaintiff's case manager, defendant Dunlap, informed him that his sister wanted him to call home. (Id. ¶ 7.) The next day, defendant Dunlap informed plaintiff that he could not attend his mother's funeral, but that he could attend a private viewing with his sister and granddaughter. (Id. ¶ 8.) Plaintiff then was sent to defendant Gullet to request a hardship call. (Id.) Plaintiff states that defendant Gullet denied his request for a hardship call, and that plaintiff then met with defendant Hildreth, defendant Luther, and defendant Dunlap. (Id. ¶ 11.)

While meeting with defendant Hildreth, defendant Luther, and defendant Dunlap, plaintiff experienced an "upset state of mind." (Hildreth Aff. ¶ 6.) Due to plaintiff's mental state, prison officials placed him in administrative segregation for a period of three days and referred him for a mental health assessment. (Id. ¶¶ 6, 9.) Although plaintiff disputes this fact, defendant Hildreth submitted an affidavit stating that plaintiff was offered the use of the telephone on several occasions during this time period. (Id. ¶ 8.) On December 23, 2010, plaintiff was transported to his mother's private viewing. (Pl.'s Decl. (DE 181 ¶ 15).) Upon his return to Albemarle, plaintiff was placed in general population. (Id. ¶ 16.)

## DISCUSSION

A.      Motion to Amend

Plaintiff seeks leave to amend his complaint to include claims which arose in March 2014. Plaintiff also raises new claims in his responses to defendants' respective motions for summary judgment. Plaintiff requires leave of court to amend his complaint. See Fed. R. Civ. P. 15(a)(2).

Allowing plaintiff the opportunity to amend his complaint at this point would "seriously undermine the fairness of the litigation and unfairly prejudice the defendants." United States v. ex rel. DRC, Inc. v. Ouster Battles, LLC, 472 F. Supp. 2d 787, 796 (E.D. Va. 2007), aff'd 562 F. 3d 295 (4th Cir. Apr. 10, 2009). Further, many of the new claims appear to have arisen in 2014. Accordingly, plaintiff could not have exhausted the new claims prior to bringing this action. See 42 U.S.C. § 1997e(a). Thus, plaintiff's motion to amend is DENIED.

B.      Motion to Serve Remainder of Sentence on Work Release

Plaintiff moves the court to enter an order directing prison officials to order that plaintiff serve the remainder of his sentence on work release or at a minimum custody federal facility. The court notes that plaintiff is not entitled to choose his place of incarceration. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thus, plaintiff's motion is DENIED.

B.      Motions for Summary Judgment

1.      Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2.      Analysis

a.      Exhaustion of Administrative Remedies

The non-medical defendants assert that plaintiff failed to exhaust his administrative remedies for the following claims:  (1) defendant Sherrod and defendant Robinson transferred plaintiff to Johnson in retaliation for exercising his right pursuant to the First Amendment to the United States Constitution by sending a letter to defendant Sherrod; (2) all claims arising out of Johnston against defendant Hall, defendant Mitchell, defendant Mewhorter, defendant Hocutt, and defendant Tasto, with the exception of plaintiff's claim that he was forced to stand outside in inclement weather; and (3) Albemarle staff required inmates to share the same beard trimmer.  The court now considers whether plaintiff exhausted his administrative remedies for these claims.

Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing an action under 42 U.S.C. § 1983 concerning his confinement.  Woodford v. Ngo, 548 U.S. 81, 83-85 (2006); see Jones v. Bock, 549 U.S. 199, 217 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).  The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford, 548 U.S. at 84.  Exhaustion is mandatory.  Woodford, 548 U.S. at 85; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory.");  Anderson, 407 F.3d at 677.  A prisoner must exhaust his administrative remedies even if the relief requested is not available under

9

the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

The North Carolina Department of Correction ("DOC") has a three-step administrative remedy procedure which governs the filing of grievances. See, e.g., Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). The DOC's Administrative Remedy Procedure ("ARP") first encourages inmates to attempt informal communication with responsible authorities at the facility in which the problem arose. DOC ARP § .0301(a). If informal resolution is unsuccessful, the DOC ARP provides that any inmate in DOC custody may submit a written grievance on Form DC-410. Id. § .0310(a). If the inmate is not satisfied with the decision reached at the step one level of the grievance process, he may request relief from the Facility Head. Id. at § .0310(b)(1). If the inmate is not satisfied with the decision reached by the Facility Head, he may appeal his grievance to the Secretary of Correction through the inmate grievance examiner. Id. § .0310(c)(1). The decision by the Inmate Grievance Examiner or a modification by the Secretary of Correction shall constitute the final step of the ARP. Id. § .0310(c)(6).

In this case, the record reflects that plaintiff properly grieved his retaliatory transfer claim against defendant Sherrod and defendant Robinson. See (Answ. (DE 61, Ex. B, p. 11).) As for the remaining claims, the record reflects that plaintiff did not grieve these issues, and plaintiff has not presented any evidence to suggest otherwise. See (Couch[2] Aff. Exs A, B, C.) Thus, plaintiff's claims arising out of Johnston against defendant Hall, defendant Mitchell, defendant Mewhorter, defendant Hocutt, and defendant Tasto, with the exception of plaintiff's claim that he was forced to

---

[2] Executive Director of the North Carolina Inmate Grievance Resolution Board, Finesse G. Couch, submitted an affidavit in support of the non-physician defendants' motion for summary judgment. Couch Aff. ¶ 3.

stand outside in inclement weather,[3] as well as plaintiff's claim that Albemarle staff required inmates to share the same beard trimmer are DISMISSED without prejudice for failure to exhaust administrative remedies.

b. Prison Conditions

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). The first prong is an objective one – the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious" – and the second prong is subjective – the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." Strickler, 989 F.2d at 1379 (internal quotations omitted).

---

[3] The court notes that plaintiff alleges a retaliatory transfer from Johnston. However, the record clearly reflects that plaintiff actually requested a transfer from Johnston. (Couch Aff. (DE 211) Attach. pp. 14-17.) Thus, even if plaintiff exhausted his administrative remedies for this claim, defendants' would be entitled to summary judgment.

1.    Exposure to Inclement Weather

Plaintiff contends that defendants defendant Hall, defendant Mitchell, defendant Mewhorter, defendant Hocutt, and defendant Tasto, required him to stand "outside in inclement weather without proper clothing" while waiting to enter the dining hall.  (DE 26, p. 15.)  Plaintiff states that these conditions are "serious and extreme and cause[d] more injury than discomfort alone."  (Id. p. 16.)

Plaintiff is unable to satisfy the objective prong of the Eighth Amendment test with respect to this claim because he has not demonstrated that he suffered any injury as a result of being required to wait in line outdoors to enter the dining hall.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981) ("[T]he constitution does not mandate comfortable prisons . . . ."); Strickler, 989 F.2d at 1381 (finding that in order to "withstand summary judgment" on an Eighth Amendment claim, a prisoner "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions.")  Plaintiff, further, has not provided sufficient factual support for this claim, including any dates, times, or identifying information for defendants.  See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (dismissing complaint where it "failed to contain any factual allegations tending to support [plaintiff's] bare assertion . . . .")  Based upon the foregoing, summary judgment is GRANTED as to this claim.

2.    Hardship Call

Plaintiff contends that defendant Lanier, defendant Hildreth, defendant Luther, defendant Gullet, defendant Dunlap, defendant Colson, and defendant Rodosevic violated his constitutional rights at Albemarle because they denied him a hardship call prior to his mother's death on December 18, 2010.  "There is no constitutional or federal statutory right to use a telephone while in prison."

United States v. Alkire, No. 95-7885, 1996 WL 166400, at * 1 (4th Cir. Apr. 10, 1996); Coil v.

Peterkin, No. 1:07CV145, 2009 WL 3247848, at *10 (M.D.N.C. Oct. 5, 2009) ("Since inmates do

not have a constitutional right to telephone access, Defendant's denial of telephone access to

Plaintiff is not a ground upon which Plaintiff can be granted relief."), aff'd, 401 F. App'x 773

(2010). Further, the record reflects that plaintiff was permitted contact with his family following

the death of his mother because he was permitted to attend a private viewing with some family

members. Based upon the foregoing, the court will grant summary judgment as to this claim.

To the extent plaintiff alleges that his rights pursuant to the Due Process Clause of the

Fourteenth Amendment to the United States constitution were violated because he was placed in

segregation subsequent to the denial of his hardship call, this claim also fails. In order to prevail on

either a procedural or substantive due process claim, an inmate first must demonstrate that he was

deprived of "life, liberty or property" by governmental action. See Plyler v. Moore, 100 F.3d 365,

374 (4th Cir. 1996). Generally, confinement in segregation does not exceed the sentence imposed

in such an extreme way as to give rise to the protection of the Due Process Clause by its own force.

See Baker v. Lyles, 904 F.2d 925, 931 (4th Cir. 1990); see also, United States v. Daniels, No. 07-

4085, 2007 WL 1031668, n.* (4th Cir. Mar. 30, 2007); Williams v. Johnson, No. 7:10-cv-00377,

2010 WL 3395700, at *2 (W.D. Va. Aug. 26, 2010) ("An inmate does not have a constitutional right

to be placed in a specific security classification or facility, and custodial classifications do not create

a major disruption in a prisoner's environment."). Some courts have concluded that inmates may

enjoy a liberty interest in avoiding solitary confinement or isolation. See, e.g., Syndor v. Mahon,

No. 3:10cv780, 2012 WL 604039, at *2, n4 (E.D. Va. Feb. 23, 2012). However, to establish a due

process claim, a plaintiff must allege facts that suggest his solitary confinement was atypical as

compared to ordinary prison life. See Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997). Plaintiff has not met this burden, particularly in light of the fact that plaintiff was placed in segregation for a short three-day period of time. Thus, the court will grant summary judgment for defendant Lanier, defendant Hildreth, defendant Luther, defendant Gullet, defendant Dunlap, defendant Colson, and defendant Rodosevic as to this claim.

        c.      Deliberate Indifference to Medical Needs

Plaintiff alleges defendant Bell, defendant Hassan, and defendant Kenworthy acted with deliberate indifference to his serious medical needs. As stated, "[i]n order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler, 989 F.2d at 1379.

The court focuses its inquiry in this action on the second prong of the test–whether defendants acted with deliberate indifference to plaintiff's serious medical needs. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

14

1.     Hassan

The court begins with plaintiff's claim that, on December 9, 2010, defendant Hassan refused to order a pair of "Dr. 2 Shoes," which previously were prescribed by a podiatrist. The record reflects that defendant Hassan examined plaintiff on December 9, 2010, and determined that a new pair of "Dr. 2 Shoes" was not medically necessary. (Hassan Aff. ¶¶ 9, 12, 13.) Defendant Hassan, instead, made the medical judgment that gel insoles were more appropriate for plaintiff's foot condition. (Id. ¶ 10.) In doing so, plaintiff contends that defendant Hassan was deliberately indifferent to his medical needs.

Plaintiff's disagreement with defendant Hassan's form of treatment is not actionable pursuant to § 1983. Russell, 528 F.2d at 319; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citation omitted) ("Disagreements between and inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."). Further, any mistakes of medical judgment are not actionable pursuant to § 1983. See Estelle, 429 U.S. at 107, see also, Hernandez v. Lewis, No. 5:10-CT-3046-D, 2012 WL 174400, at *3 (E.D.N.C. Jan. 20, 2012) ("Hernandez's allegation concerning his request for orthopedic shoes amounts to nothing more than a disagreement over the proper course of treatment.") Finally, the fact that defendant Hassan's treatment of plaintiff may not have been effective does not give rise to a constitutional violation either. See e.g., Russell, 528 F.2d at 319; Starling v. United States, 664 F. Supp. 2d 558, 569-70 (D.S.C. 2009); see also, Johnson, 145 F.3d at 167 (finding that negligent acts are not sufficient to establish a constitutional violation).

The court now turns to plaintiff's complaint that defendant Hassan ordered plaintiff the incorrect size gel insoles for his shoes. In support of this claim, plaintiff states that defendant

Hassan ordered him a size twelve (12) gel insoles, whereas, plaintiff required a size 10 ½ EEE gel insoles. To the extent defendant Hassan ordered plaintiff the incorrect size gel insoles, the gel insoles could have been trimmed to conform to the size of plaintiff's shoes. (Hassan Aff. ¶ 16.) Accordingly, plaintiff has not demonstrated that he suffered any actionable injury. Strickler, 989 F.2d at 1379 (stating that in order to establish an Eighth Amendment violation a plaintiff must establish a serious deprivation of a basic human need). Nor does any negligence in connection with defendant Hassan's determination of plaintiff's correct shoe size give rise to a constitutional violation. See Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

Based upon the foregoing, the court finds that plaintiff has not established the subjective element of his Eighth Amendment deliberate indifference claim. Thus, there is no constitutional violation, and defendant Hassan is entitled to qualified immunity.

          2.      Bell

Plaintiff alleges that defendant Bell acted with deliberate indifference to his medical needs because no pain medication or antibiotics were provided to plaintiff for four days after the November 13, 2008, removal of his ingrown toenail. Plaintiff also alleges that he was denied medical boots at Tabor on October 23, 2008. Finally, plaintiff alleges that "Dr. [R]on Bell asked a nurse to stop referring post surgery inmates to him. Dr. [R]on Bell failed to conduct a post surgery screening and refused issuance of medical boots." (DE 26, p. 7.)

Plaintiff's complaints that defendant Bell denied him post-surgical antibiotic, pain medication, or any other treatment are belied by the record. For instance, the record reflects that plaintiff was prescribed both antibiotics and pain medication by the podiatrist on November 13, 2008 (the date of his procedure), as well as the next day by a DPS physician. (Bell Aff. ¶¶ 13-14; Pl's

Resp. (DE 175), Ex. A.) Defendant Bell also prescribed plaintiff Keflex (an antibiotic) and Darvocet (a pain medication) on November 20, 2008. (Bell Aff. ¶ 16.) Plaintiff also was prescribed foot soaks and antibiotic ointment. (Id. ¶ 12.) Thus, the record reflects that DPS physicians provided plaintiff post-surgical care and prescribed the pain medication and antibiotics recommended by the podiatrist following plaintiff's foot surgery.

Although plaintiff alleges "it took medical four days to bring [him] pain medication and antibiotics," he does not allege that defendant Bell was responsible for the delay in providing him medication. (Am. Compl. (DE 26, p. 6).) Rather, plaintiff states that he received the medication once he brought the issue to the attention of Captain Gilchrist. (Id.) Because medical staff provided plaintiff with the required medication once they were aware of the issue, there is no evidence that any defendant actually knew of and disregarded plaintiff's need for pain medication or antibiotics. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (stating that to show a defendant's deliberate indifference to a serious medical need, a prisoner must allege the defendant knew of any disregarded "the risk posed by" that need). Moreover, any negligence on behalf of prison officials in administering plaintiff his medication is not actionable pursuant to § 1983. See Estelle, 429 U.S. at 105-106.

As for plaintiff's contention that defendant Bell denied him medical boots at Tabor, the record again belies plaintiff's claim. The record reflects that, on November 18, 2008, Bell recommended that plaintiff be provided with medical boots. (Bell Aff. ¶ 15; Pl's Resp. (DE 175), Ex. A.) Defendant Bell attests in his affidavit that he has no control over the issuance of medical boots (Id.), and plaintiff has not presented any evidence to the contrary. Thus, there is no evidence that defendant Bell knew of and disregarded plaintiff's need for medical boots.

Based upon the foregoing, the court finds that plaintiff has not established that defendant Bell violated his Eighth Amendment rights. Because plaintiff has not established a constitutional violation, defendant Bell is entitled to qualified immunity for plaintiff's claim. Thus, defendant Bell's motion for summary judgment will be granted.

3. Kenworthy

Plaintiff also contends that defendant Kenworthy, a correctional administrator at Tabor, acted with deliberate indifference to his need for medical boots. Specifically, plaintiff alleges that defendant Kenworthy "refused to allow the return of his boots [after they were confiscated upon transfer to Tabor] due to Tabor C.I. being a 'bootless' prison" and "instructed the Nurse Supervisor not to issue any order for boots and to write a statement indicating that the Plaintiff had no record of medical boots in his jacket."[4] (DE 26, pp. 6-7).

A prison guard acts with deliberate indifference to a serious medical need by intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment. Estelle, 429 U.S. at 104-05; Watson v. Brown, 446 F. App'x 643, 645 (4th Cir. 2011). Here, the record reflects that plaintiff filed a grievance, on October 23, 2008, complaining that his medical boots were confiscated upon his transfer to Tabor. (DE 67, Ex. A.) Prison officials responded to plaintiff's grievance indicating that plaintiff did not have an order for medical boots in his file. (Id.) Defendant Bell then recommended medical boots for plaintiff, on November 18, 2008, and plaintiff admits that he received medical boots on December 23, 2008. (Bell Aff. ¶ 15; Am. Compl. (DE 26, p. 7).) Based upon the foregoing, it appears that there was some confusion in whether custody staff

---

[4] The court notes that this claim was raised and dismissed as frivolous in Nunn v. Hunt, No. 5:11-CT-3222-D, 2012 WL 3870365, at *3 (E.D.N.C. Sept. 6, 2012). Accordingly, the claim alternatively is barred by the doctrine of *res judicata*.

or medical staff were responsible for the provision of plaintiff's boots. However, there is no evidence to suggest that any delay in plaintiff receiving his medical boots at Tabor was the result of deliberate misconduct. Nor is there any evidence that defendant Kenworthy interfered with plaintiff's prescribed treatment. As a result, plaintiff has failed to establish the subjective prong of the Eighth Amendment test. Because plaintiff failed to establish a constitutional violation for this claim, defendant Kenworthy is entitled to qualified immunity.[5]

    d.    Retaliation

Plaintiff alleges that defendant Lanier, defendant Hildreth, defendant Luther, defendant Gullett, defendant Dunlap, defendant Colson, and defendant Rodosevic retaliated against him for requesting a hardship call by placing him in segregation. Plaintiff additionally alleges that defendant Sherrod and defendant Robinson transferred him from Franklin to another correctional facility in retaliation for writing a letter to defendant Sherrod. The court addresses each of these in turn.

Claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). For an inmate to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Moreover, in a retaliation action alleging First Amendment violations, a plaintiff must establish that conduct complained of adversely affected his constitutional rights. ACLU v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). Additionally, a plaintiff must allege specific

---

[5] To the extent plaintiff seeks to hold defendant Kenworthy responsible for the medical care he received at Tabor, such claims fails because *respondeat superior* generally is inapplicable in § 1983 suits. Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978).

facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension.  <u>Adams</u>, 40 F.3d at 74-75.

Beginning with plaintiff's claim that defendant Lanier, defendant Hildreth, defendant Luther, defendant Gullett, defendant Dunlap, defendant Colson, and defendant Rodosevic retaliated against him for requesting a hardship call, the record belies plaintiff's claim.  The record, instead, reflects that plaintiff was temporarily placed in segregation for a three-day period to assess his mental state following his mother's death.  (Hildreth Aff. ¶ 6; Pl's Decl. (DE 181 ¶ 14).)  The record further reflects that prison officials at Albemarle allowed plaintiff to attend a private viewing of his mother with family members.  (Pl's Decl. (DE 181, Attach. ¶ 15.)  Accordingly, there is no evidence that defendant Lanier, defendant Hildreth, defendant Luther, defendant Gullett, defendant Dunlap, defendant Colson, and defendant Rodosevic engaged in retaliatory conduct.  Nor has plaintiff provided any evidence of retaliation.[6]  Plaintiff's conclusory allegations of retaliation are insufficient to establish a constitutional violation.  <u>Adams</u>, 40 F.3d at 74.  Thus, defendants are entitled to summary judgment for this claim.

The court now turns to plaintiff's contention that defendant Sherrod and defendant Robinson transferred him away from Franklin in retaliation for a letter plaintiff wrote to defendant Sherrod.[7]

---

[6] Plaintiff makes the conclusory allegation that unknown defendants engaged in unlawful searches and seizures in retaliation for his filing a lawsuit.  Because plaintiff provides no factual support for this claim, it is meritless.  <u>See</u> <u>White</u>, 886 F.2d at 723.

[7] The court dismissed plaintiff's access to courts claim involving defendant Sherrod's alleged refusal to provide plaintiff with litigation assistance in the court's December 15, 2011, frivolity review.  The court determined that plaintiff failed to allege any actual injury.  To the extent plaintiff alleges that the refusal to provide copies for his post-conviction proceedings resulted in adverse consequences in that he was unable to attach his supporting exhibits to his petition for a <i>writ of certiorari</i> to the North Carolina Court of Appeals or his petition for discretionary review to the North Carolina Supreme Court, plaintiff still has not adequately alleged an access to courts claim because he has not alleged that Sherrod's alleged actions impeded his ability to pursue a non-frivolous claim.  <u>Lewis v. Casey</u>, 518 U.S. 343, 353 (1996).

Plaintiff has not alleged any specific facts to support his claim of retaliation, nor is there any evidence of retaliation. Instead, the evidence directly contradicts a finding of retaliation in that plaintiff submitted a grievance in which he specifically requested a transfer from Franklin. (DE 61, Ex. B, p. 1.) Thus, the court will grant summary judgment in favor of defendant Sherrod and defendant Robinson with respect to this claim.

      e.      Injunctive Relief

The court now addresses plaintiff's request for injunctive relief. Because the court determined that plaintiff has not established a constitutional violation, his claims for injunctive relief are DENIED. See Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981) ("Injunctive relief may be granted only upon plaintiff's proof of constitutional violations."), aff'd, 676 F.2d 690 (4th Cir. 1982).

## CONCLUSION

Based upon the foregoing, the court GRANTS defendants' respective motions for summary judgment (DE 150, 152, 164). Plaintiff's unexhausted claims are DISMISSED without prejudice to allow plaintiff the opportunity to exhaust his administrative remedies. Because the court granted defendants' motions for summary judgment, plaintiff's motion for a preliminary injunction (DE 215) is DENIED as moot. Finally, plaintiff's motion to amend (DE 219) and motion to serve the remainder of his sentence on work release (DE 218) are DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 26th day of March, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge